Larry Zerner (SBN 155473)
Morrison & Rothman
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:  (310) 773-3623
Email: Larry@MorrisonRothman.com

Attorney for Soulbound Studios, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES FALLS, individually and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOULBOUND STUDIOS, LLC;<br>SOULBOUND STUDIOS (USA);<br>XSOLLA (USA) Inc.; and Does 1 – 50, inclusive,<br><br>Defendants. | Case No. 2:21-CV-00961-SVW (JPR)<br><br>DEFENDANT SOULBOUND STUDIOS, LLC'S  REPLY BRIEF RE MOTION TO DISMISS COMPLAINT<br><br>HEARING DATE: May 10, 2021<br>TIME: 1:30 p.m.<br>COURTROOM: 10A<br><br>Action Filed: February 2, 2021<br>Trial Date: Not Set |

- i –

Reply Brief Re Motion to Dismiss

# TABLE OF CONTENTS

**I.     THE COURT SHOULD DISMISS THE CASE UNDER THE DOCTRINE OF FORUM NON CONVENIENS.     1**

**II.  THE COURT SHOULD DISMISS THE SECOND AND THIRD CAUSES OF ACTION BECAUSE THE CRLA DOES NOT APPLY TO THE SALE OF DIGITAL GOODS.**........................................................   3

A.**The Complaint alleges that Plaintiff purchased goods, not paid for a Service.**.......................................................................................3

B.**SBS' Terms of Service Specifically Refers to the Sale of Goods.**............5

**CONCLUSION** ...................................................................................... 7

# TABLE OF AUTHORITIES

## CASES

*Bancomer, S.A. v. Superior Ct.*, 44 Cal. App. 4th 1450, 1462 (1996) .......................... 1

*In re: Yahoo! Inc. Customer Data Sec. Breach Lit.*, 313 F. Supp. 3d 1113, 1141–42

  (N.D. Cal. 2018). ....................................................................................... 4

*Primary Color Sys. Corp. v. Agfa Corp.*, SACV 17-00761 JVS, 2017 WL 8220729, at *6

  (C.D. Cal. July 13, 2017) ................................................................................. 1

Soulbound Reply Brief

## I.      THE COURT SHOULD DISMISS THE CASE UNDER THE DOCTRINE OF FORUM NON CONVENIENS.

As Plaintiff concedes in his Opposition, if the forum selection clause is enforceable than the private interests' factors are ignored. (Opposition at 7:3-4). Plaintiff also concedes that the forum selection should be enforced except where enforcement would be unreasonable or unjust. (Opposition at 7:5-7).[1]

The Opposition Brief does not argue that the forum selection clause is unenforceable.  Instead, Plaintiff  argues that enforcing the forum selection clause would be unreasonable. However, the brief does not include any explanation as to why it would be unreasonable to have this lawsuit between an Ohio resident and a Washington company heard in Washington as opposed to California.

Plaintiff cites to *Bancomer, S.A. v. Superior Ct.*, 44 Cal. App. 4th 1450, 1462 (1996) but offers no analysis in his brief as to why this case has relevance to the current situation or why a decision from the California Court of Appeals would be binding or precedential on this court.

Plaintiff also argues that *Primary Color Sys. Corp. v. Agfa Corp.*, SACV 17-00761 JVS, 2017 WL 8220729, at *6 (C.D. Cal. July 13, 2017) is relevant to the current situation.  It is not.  In *Primary Color,* the Plaintiff had entered into multiple agreements with Defendant, one which had a forum selection clause requiring

---

[1] Plaintiff actually wrote that the "forum selection clause should <u>not</u> be enforced," however this appears to be a scrivener's error as the case he cites states, "[F]orum selection clauses are presumptively valid and should only be set aside if the party challenging enforcement can "clearly show that enforcement would be unreasonable and unjust." *LaCross v. Knight Transportation, Inc.*, 95 F. Supp. 3d 1199, 1203 (C.D. Cal. 2015)

- 1 –

Reply Brief Re Motion to Dismiss

litigation in New Jersey, while the other agreements called for disputes to be heard in Belgium.  Under those circumstances, the court held that it would be a waste of judicial and party resources for the Plaintiff to split the action and litigate one claim against the Defendant in New Jersey and three claims against it in Belgium. *Id*.

*Primary Color* is inapplicable because Plaintiff would not have to divide his claim against Soulbound.  Plaintiff does not cite any case to support his position that if he sues two separate companies, with two different forum selection clauses, then the court should not respect those forum selection clauses.

Plaintiff claims that the forum selection clause was hidden within the various terms of the terms of services. Nothing could be further from the truth.

A review of the three different Terms of Service used by SBS shows that in all three, the provision requiring Washington as the venue is in a separate paragraph with the heading "Applicable Law, Jurisdiction, and Venue."  The Terms of Service are not particularly long for an online contract (about 8 pages) and so are easy to spot.

Plaintiff argues that this might be a contract of adhesion but despite the fact that Plaintiff made approximately 60 separate purchases from SBS, does not assert that he ever asked for any changes to the agreement, or provide any evidence that he did not know about the forum selection clause.

Furthermore, had Plaintiff asked for a change to the venue provision, he surely would have asked for the venue to be changed to Ohio, where he lives.  If Plaintiff is fine with litigating this matter in a foreign state, there is no reason why the case should not be litigated in Washington, as opposed to California, especially as California has not interest in the dispute between Plaintiff and SBS.

Finally, as the agreement between Xsolla and Plaintiff contained an arbitration clause, and Xsolla has filed a motion to enforce that arbitration clause, if the Court

grants Xsolla's motion then the cases would be split, even if the action against SBS remained in California.

## II.   THE COURT SHOULD DISMISS THE SECOND AND THIRD CAUSES OF ACTION BECAUSE THE CRLA DOES NOT APPLY TO THE SALE OF DIGITAL GOODS.

As set forth in the Motion, Plaintiff has not pled a claim for violation of the CLRA because the CLRA only applies to the sale of "tangible chattels" and the digital content downloaded by Plaintiff and the other putative class members is not a "tangible chattel."

Plaintiff attempts to argue around this issue by claiming that SBS was actually offering a service.  Plaintiff's argument fails because a) no where in the Complaint does Plaintiff allege that SBS was offering a service and Plaintiff is not seeking a refund for the failure to provide "services"; and b) the Terms of Service specifically refer to the content Plaintiff purchased as a "good;

A. **The Complaint alleges that Plaintiff purchased goods, not paid for a Service.**

Plaintiff's first argument is that the contract between Plaintiff and Defendant by which Plaintiff bought digital content for the game was actually a contract for services. Plaintiff asserts that SBS promised to "continue to maintain, manage, and update the servers and the game itself during the lifetime of the game." (Opposition p.12:10-14). Plaintiff does not cite to any evidence to support this assertion. Moreover, the gravamen of the complaint is that Plaintiff paid for downloadable content and wants a refund for that "content." Nowhere in the Complaint does Plaintiff allege that SBS failed to provide Plaintiff with a service.

Here is what the Complaint actually states about what is at issue.

- "Xsolla was the payment processor SBS used for processing payments directed from SBS's online store for the *purchase of digital and physical goods* related to CoE. ¶12. (Emphasis added).

- "The "sales" referenced herein mean *items were purchased* from SBS through Xsolla with the expectation of receiving those items and using them in CoE." ¶15. (Emphasis added).

- Plaintiff purchased approximately $20,000 in *downloadable content* for CoE." ¶18 (Emphasis added).

- "The members of the Class are defined as follows: All persons in the world *who purchased downloadable content* for Chronicles of Elyria from Soulbound Studios and Xsolla within the last four (4) years, *requested a refund where no game content had been delivered*, and did not receive a refund. ¶24 (Emphasis added).

- "Plaintiff, and those similarly situated, entered into a written contract (with implied provisions) with SBS and Xsolla. The terms of the contract was that SBS would refund Plaintiff and the putative class's money for *downloadable content, upon request, where no game content had been delivered."* ¶32 (Emphasis added).

It is apparent from reading these statements that Plaintiff is solely complaining about the sale of digital content, not the failure to provide a service.

Plaintiff argues that this case is similar to *In re: Yahoo! Inc. Customer Data Sec. Breach Lit.*, 313 F. Supp. 3d 1113, 1141–42 (N.D. Cal. 2018). That is simply not true.  The *Yahoo! Inc* case dealt with complaints concerning Yahoo Mail.  It is difficult to see how an email service is comparable to game content.

Further, if this were a service, Plaintiff would have been charged a monthly or yearly fee.  Plaintiff's allegation is that he paid for $20,000 of digital content to be used in the game. ¶18.  He does not allege that he bought $20,000 worth of services.

Soulbound Reply Brief

B. **SBS' Terms of Service Specifically Refers to the Sale of Goods.**

Plaintiff also argues that because SBS' Terms of Service ("TOS") uses the term "service," then Plaintiff must have bought a service.  Plaintiff is just selectively quoting from the SBS TOS.

While the TOS sometimes uses the terms "service," it specifically refers to the digital content at issue in this case as "goods," and differentiates between the sale of the digital goods and the providing of the service.

For example, SBS' October 2016 "Terms of Use" contains, *inter alia*, the following provisions:

"Goods, Perks, and Attributes" shall mean any character attribute, item utilized within the game, reputation, citizenship, title, in game currency, or any other item or attribute utilized within the game, whether or not purchased by You, given to You, or otherwise obtained through your use of the Services." Falls Decl. Ex. D, p.7

"**In Game Purchases of Goods, Perks, and Attributes**

All Goods, Perks, and Attributes remain shall remain the property of Soulbound Studios at all times and are subject to its sole determination as to rules, regulations, and game play. You acknowledge and agree You have a limited license to access and use Goods, Perks, and Services which is governed by these Terms of Services, as well as the Soulbound Studios End User License Agreement, as they may be amended from time to time. You acknowledge Goods, Perks, and Attributes have no cash value and are not redeemable for any some of money or monetary value from Soulbound Studios at any time, including removal of Goods, Perks, and Attributes from your account due to changes by Soulbound Studios to the Services. You expressly acknowledge and agree Soulbound Studios may change, modify, update, suspend, delete, remove, or otherwise alter the appearance, function, use, and/or properties of the Service

Soulbound Reply Brief

or any Goods, Perks, and Attributes, and that such changes enhance and improve Your use of the Services. These terms apply in full to transfer of limited license to any other user of the Services, including any gifting, in game contract enforcement, or to any other use, transfer, or transaction involving Goods, Perks and Attributes." Ex. D p.9-10.

**"Purchases and Refunds**

You acknowledge and accept that all purchases of the Services, as well as any purchase of any Goods, Perks, and Attributes, is FINAL. You acknowledge and agree that any applicable fees and other charges, including those paid for licenses to the Services or any Goods, Perks, and Attributes, including any virtual in game currency, are not refundable, in whole or in part. You acknowledge you will not be refunded, receive money, or otherwise be compensated or credited for unused virtual currency or other Goods, Perks, and Attributes, or of any unused Services, when an account is closed, whether such closure is voluntary or involuntary. Ex. D p.10.

Similar provisions exist in the other Terms of Use attached to the Walsh Declaration as Exhibits E and F.

If Plaintiff wants to use the language in the TOS to argue his case, he must ask the Court to review the entire TOS. As the TOS specifically describes the sale of the digital goods separate and apart from the providing of any service, there is no plausible argument that this clam is about the failure to provide a service.

Plaintiff did not purchase $20,000 worth of "services." He alleges in the Complaint that he was purchasing downloadable content. As this content is not a "tangible chattel" Plaintiff has failed to state a claim under the CLRA and the 2nd and 3rd causes of action must be dismissed.

Soulbound Reply Brief

## III.   CONCLUSION

For the reasons stated above, the Court should dismiss the second and third causes of action and transfer the case to the District Court for the Western District of Washington.

Date: April 26, 2021                MORRISON ROTHMAN


                                         By: /s/Larry Zerner
                                              Larry Zerner
                                              Attorney for Defendant Soulbound Studios, LLC